UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:04-CV-179-R

DEREK GOODEN                                                                                         PLAINTIFF

v.

RYAN'S RESTAURANT GROUP, INC., f/k/a
RYAN'S FAMILY STEAK HOUSES, INC.,                                                      DEFENDANT

## MEMORANDUM OPINION

This matter comes before the Court on a Plaintiff's Motion to Quash the Subpoena (Docket # 54) requesting an instant messaging record from Plaintiff's ex-wife, Kerry Gooden Tronge. Plaintiff claims that the record is privileged under spousal immunity law. The Defendant has filed a Response, claiming that spousal immunity is inapplicable here. (Docket # 55). Plaintiff filed a Reply to the Response (Docket # 58), and Defendant filed a Surreply(Docket # 60). The matter is now ripe for adjudication. For the following reasons, the Plaintiff's Motion to Quash the Subpoena is **DENIED.**

## BACKGROUND

This claim arises in Plaintiff's reverse discrimination suit centered around his dismissal as a manager from Defendant's restaurant in Hopkinsville, Kentucky. Plaintiff was initially employed as a manager at the Clarksville, Tennessee, location of Defendant's restaurant. Plaintiff requested a transfer to the Hopkinsville location so that he might pursue a personal relationship with one of the other employees at Defendant's Hopkinsville restaurant; a transfer would be necessary, as Defendant's fraternization policy prohibits dating between employees at the same restaurant. Defendant, before granting this transfer request, attempted an investigation

of Plaintiff to ensure that he was not already dating an employee in violation of Defendant's fraternization policy. Plaintiff was uncooperative and was placed on suspension, but eventually another employee, Mary McKee, claimed that Plaintiff sought to date her and that they had not yet dated. Plaintiff's transfer request was granted. Subsequently, Plaintiff began dating a different employee of the Clarksville restaurant, Christy Lehman. This suit arises after Plaintiff was fired from his position at the Hopkinsville restaurant on grounds other than Defendant's fraternization policy.

  Defendant issued a subpoena to Defendant's ex-wife, Kerry Gooden Tronge ("Tronge"), and Yahoo! to produce a series of instant messages exchanged by Plaintiff and Tronge. Tronge and Plaintiff were divorced on March 18, 2003. The messages, as submitted by Tronge, show a conversation between Plaintiff and Tronge on March 26, 2003, discussing Plaintiff's personal relationship with another employee of Defendant named "Chris." The Plaintiff claims that Tronge altered the instant message conversation before presenting it to the Court. However, the evidence before the Court shows a conversation implying that Plaintiff was in a personal relationship with another of Defendant's employees while the two worked at the same location and before Plaintiff had requested a transfer. These messages would be introduced as support for Defendant's claim that it had an additional rationale for dismissing the Plaintiff. While Defendant does not claim that it originally dismissed Plaintiff for violation of the fraternization policy or lying during the investigation prior to his transfer, Defendant does cite this after-acquired evidence as an independent reason for dismissing Plaintiff.

  Plaintiff argues in his Motion to Quash the Subpoena for the instant messages that he may assert spousal privilege to block Defendant's access to the instant messages. Defendant

2

claims that the spousal privileges do not apply here and, that if they did apply, only Tronge can assert them. Further, Defendant claims that if Plaintiff could properly assert the privilege to block access to these communications, Plainitff has waived any claim of privilege by neglecting to object to the introduction of the instant messages into his Tennessee divorce proceedings with Tronge.

## STANDARD

Congress has declined to enumerate privileges applicable to federal cases and has instead left determination of privileges to the courts. *In re Sealed Case (Secret Service),* 525 U.S. 990 (1998) (Breyer, J., dissenting) (denying certiorari to examine the District of Columbia Court of Appeals' decision declining to recognize a Secret Service personnel evidentiary privilege). "[I]n civil actions and proceedings, with respect to an element of a claim or defense was to which State law supplies the rule of decision, the privilege of a witness [or] person... shall be determined in accordance with State law." FED. R. EVID. 501. In other proceedings, however, the applicable privileges shall be determined according to federal common law. The Supreme Court is flexible in determining when new privileges should be recognized and when old privileges should be abolished. *Swidler & Berlin v. United States*, 524 U.S. 399410, 411 (1998).

In state and federal common and statutory law, two general categories of privilege or immunity between married couples have developed: anti-marital immunity and confidential communications privilege. The party seeking application of the privilege has the burden of

proving the existence and applicability to the privilege to the facts, a burden not "discharged by mere conclusory or ipse dixit assertions." *In re Grand Jury Subpoena Dated Jan. 4, 1984*, 750 F.2d 223, 224-25 (2d Cir. 1984) (quoting *In re Bonanno*, 344 F.2d 830, 833 (2d Cir. 1965) and citing *United States v. Stern*, 511 F.2d 1364, 1367 (2d Cir. 1975); *United States v. Kovel*, 296 F.2d 918, 923 (2d Cir. 1961)).

Federal common law recognizes the anti-marital immunity.[1] *Trammel v. United States*, 445 U.S. 40 (1980). Only the witness spouse may claim this immunity; a husband or wife on trial may not unilaterally protect him or herself from the testimony of the spouse. *United States v. Porter*, 986 F.2d 1014, 1018 (6th Cir. 1993) (citing *Trammel*, 445 U.S. at 53; *United States v. Sims*, 755 F.2d 1239, 1240-41 (6th Cir. 1985). The anti-marital immunity applies only to criminal cases. *See United States v. George*, 444 F.2d 310, 313 (6th Cir. 1971); *see also In re Grand Jury Proceedings (86-2)*, 640 F.Supp. 988, 989 (E.D. Mich. 1986) (citing *United States v. Anthony*, 476 F.2d 313,315 (5th Cir. 1973)). It extends past confidential communications and allows the witness spouse to avoid testifying to any communications made during the marriage. The purpose of the anti-marital immunity is to allow a spouse to preserve marital harmony by refusing to incriminate the other spouse; if a spouse chooses to waive the immunity, "their relationship is almost certainly in disrepair[. T]here is probably little in the way of marital harmony for the privilege to preserve." *Trammel*, 445 U.S. at 52. For similar reasoning, the anti-marital immunity no longer may be asserted once the party and potential witness have divorced or permanently separated. *Porter*, 986 F.2d at 1018 (citing *Pereira v. United States*,

---

[1] This privilege is also commonly referred to as the "testimonial privilege" or simply as the marital privilege. *United States v. Byrd,* 750 F.2d 585, 590 (7th Cir. 1984).

347 U.S. 1 (1954); *Byrd,* 750 F.2d at 590).

Federal common law also recognizes the confidential communications privilege.

The confidential communications privilege may be asserted after the party and witness have divorced or separated. *Byrd*, 750 F.2d at 592 (citing *Pereira*, 347 U.S. at 6). To assert the confidential communications privilege, a person must show (i) that the communications were made in confidence (ii) that the communications were made between husband and wife (iii) and that the couple's marriage was legally recognized at the time the communications were made. *Porter*, 986 F.3d at 1018. All communications between spouses are presumed to be confidential, but this presumption may be rebutted by a showing that the circumstances or type of communication do not indicate confidentiality. *Pereira,* 347 U.S. at 6; *Byrd,* 750 F.2d 590; *Unites States v. Singleton,* 260 F.3d 1295, 1301 (11th Cir. 2001). Either spouse may assert the confidential communications privilege, not just the testifying spouse. *Sims*, 755 F.2d at 1240.

Kentucky Rule of Evidence 504 governs husband-wife privileges as applied to claims under Kentucky law. KY. R. EVID. 504. That rule, while different from the federal rule, also delineates two separate privileges. The first part of the rule allows either a party or the spouse of a party to assert the "privilege to refuse to testify against the party as to events occurring after the date of their marriage." KY. R. EVID. 504(a). The rule only applies to *spouses* of parties, requiring an ongoing marriage at the time of trial.

The second part of the Kentucky rule grants a privilege for marital communications. A party may prevent or a witness may refuse to present testimony regarding "any confidential communication made by the [party] to his or her spouse during their marriage." KY. R. EVID. 504(b). This privilege may be asserted after the dissolution of the marriage, but only protects

communications made during the course of the marriage.  "A communication is confidential if it is made privately by an individual to his or her spouse and is not intended for disclosure to any other person." *Id.*   The Kentucky rules also state that the spousal privileges do not apply "[i]n any proceeding in which the spouses are adverse parties."  KY. R. EVID. 504(c)(3).

## DISCUSSION

The present case is before this Court on statutory federal claims and state common and statutory law claims.  Plaintiff brings federal claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 200e, and Title I of the Civil Rights Act of 1991.  Plaintiff has also asserted claims under Kentucky defamation law and the Kentucky Civil Rights Act, KRS 344.010 *et seq*.  While the text messages at issue here are not relevant to the defamation claims, they are relevant as a potential defense to the state and federal statutory claims.  As the Federal Rules of Evidence state, this Court will use Kentucky state privilege law with regard to Kentucky claims and federal privilege common law with respect to federal claims.

As to the federal claims, this Court determines that no privilege is applicable.  The anti-marital immunity does not apply because (a) it can only be asserted by the witness spouse, Tronge, (b) it only applies in federal *criminal* cases, and (c) it may not be asserted in a proceeding after the marriage has dissolved.  The confidential communications privilege also does not apply, because all evidence before the Court shows that the instant message conversation took place after the dissolution of the marriage, and the privilege only shields communications made while the couple were married.

As to the Kentucky statutory claims, the Court finds that the privilege still does not

apply. The privilege under Kentucky Rule 504(a) is not applicable, as the parties will not be married at the time Tronge is to present evidence to the Court. The privilege under Kentucky Rule 504(b) does not apply because the parties were not married at the time the instant messages were sent. Thus, the instant messages are privileged with respect to neither the Kentucky nor federal claims.

The Defendant also claims that the privilege is inapplicable because the communications regarding an extramarital affair were not of a confidential nature.[2] While this argument is not a necessary basis for the Court's resolution of the case, the Court finds that insufficient evidence has been presented to rebut the presumption that the communications were made in confidence. Nonetheless, the Plaintiff has not met his burden to show that the privilege applies, and the subpoena requesting the instant messages as evidence toward the federal statutory claims is valid.

In the alternative, the Defendant argues that, if the statements were privileged, the privilege was waived. The instant messages were discovered by the Defendant after Tronge presented them at Tennessee state proceedings relating to her divorce from Plaintiff. Defendant contends that because the communications have been presented in a court, the privilege has been waived. Plaintiff points out that Tennessee privilege law, like Kentucky privilege law, does not

---

[2] Plaintiff makes a somewhat confusing argument relating to this issue. In addition to making conclusory statements that the communications were confidential merely because Plaintiff would not have disclosed his private life to "any stranger on the street," Plaintiff implies that the purpose of the confidential communications privilege is to "foster the harmony and sanctity of the marital relationship. Pl.'s Reply Mem. on the Spousal Immunity Issue at 4 (citing *Trammel,* 455 U.S. 40). *Trammel* discusses the anti-marital immunity, not the confidential communications privilege. As confidentiality is not a requirement for the anti-marital immunity to apply, *Trammel* is inapposite to this argument.

apply husband-wife privileges when the spouses are adversaries in the proceeding. TENN. CODE ANN. § 24-1-201(b) (2006). Thus, Plaintiff was unable to assert the privilege to keep the communications out of court. While it does not affect the Court's decision on the matter, the Court finds that the Plaintiff did not waive any privilege he might have by failing assert the privilege where it did not apply.

Plaintiff argues that the federal and Kentucky confidential communications privileges should be applicable to this case because he contends the communications at issue were made during the course of the marriage. Plaintiff asserts that the instant messages refer to privileged communications between Tronge and Plaintiff made during their marriage, before the instant messages. The Court is not persuaded by this argument. First, the Plaintiff who is asserting the privilege has the burden of proving that the factual requirements underlying the privilege are present in this case, and must assert more than bare claims that the privilege applies. Plaintiff's conclusory statements that "[t]he only way that... Tronge could have any knowledge of whether or not [Plaintiff] was pursuing a personal relationship with a[n employee of Defendant during Plaintiff's employment] is if she learned so during the course and scope of their marriage," do not convince this Court that the communications were made during the marriage. Pl.'s Mot. to Quash at 4. Second, even if the conversation refers to statements made during the marriage, the subsequent instant message conversation between Tronge and the Plaintiff was after the dissolution of the marriage. Therefore, the statements were not longer confidentially intimated only between spouses, but were repeated in an unprivileged conversation.

## CONCLUSION

The Motion to Quash the Defendant's Subpoena of Tronge's records of the instant

8

messaging conversation is **DENIED** as neither Kentucky nor federal marital privileges or immunities apply.  An appropriate order shall issue.