UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:04-CV-179-R

DEREK GOODEN                                                                    PLAINTIFF

v.

RYAN'S RESTAURANT GROUP, INC., f/k/a
RYAN'S FAMILY STEAK HOUSES, INC.,                                 DEFENDANT

## MEMORANDUM OPINION

This matter comes before the Court on Defendant's Motion for Summary Judgment on all Plaintiff's claims (Docket #61).  Plaintiff responded (Docket #64), and Defendant replied to that Response (Docket #65).  The matter is now ripe for decision.  For the following reasons, the Defendant's Motion for Summary Judgment is now **GRANTED** in full**.**

## BACKGROUND

This reverse discrimination case arises from Plaintiff, Derek Gooden's, claims that Defendant, Ryan's Restaurant Group, Inc., has violated both Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000(e) *et seq.*, and Title I of the Civil Rights Act of 1991, 42 U.S.C. §1981a.  The Plaintiff also asserted claims under the Kentucky Civil Rights Act and under Kentucky defamation common law.  Plaintiff has withdrawn his claims under the Kentucky Civil Rights Act, as they were not included in his Amended Complaint.  Plaintiff has also withdrawn his claims of defamation, as stated in his Response to Defendant's Motion for

Summary Judgment.  Only Plaintiff's reverse discrimination claims under federal civil rights law remain.

Plaintiff originally worked as a manager employed by Defendant's restaurants in Clarksville, Tennessee.  Defendant maintains an anti-fraternization policy, prohibiting employees of the same restaurant from maintaining a personal relationship.  At least partially motivated by the pursuit of a personal relationship with one of the servers at the Defendant's Clarksville restaurant, Plaintiff requested a transfer to Defendant's Hopkinsville, Kentucky, restaurant.  Defendant conducted an investigation as to whether Plaintiff had already violated the fraternization policy.  While Plaintiff was uncooperative in this investigation and was disciplined for his uncooperativeness, a server, Mary McKee, eventually stepped forward claiming to be the employee Plaintiff wished to date.  Ms. McKee stated that she had not yet had a relationship with Plaintiff.  As a result, the transfer request was granted.  Subsequently, Plaintiff never dated Ms. McKee, and instead became openly involved in a serious relationship with another server, Christy Lehman.  Plaintiff now cohabitates with Ms. Lehman.

During the investigation, Plaintiff was adamant that he had not violated the fraternization policy at the restaurant.  In preparation for this case, Defendant discovered instant messages sent between Plaintiff and his ex-wife, Kerry Tronge, on Yahoo! Instant Messenger.  These messages were sent during Defendant's investigation of Plaintiff before approving the transfer.  The messages indicate that Plaintiff had lied to Defendant in the investigation and was already involved in a personal relationship with Ms. Lehman.  While Plaintiff contends that Ms. Tronge altered the messages, Defendant has received confirmation from Yahoo! that the messages were unaltered.  These messages show cause for Defendant to terminate Plaintiff both because he

2

violated the fraternization policy and because he lied to Defendant, if Defendant had known of the messages while still employing Plaintiff.

Once Plaintiff transferred to the Hopkinsville restaurant, he encountered further trouble. While Defendant does not assert that Plaintiff's work was substandard, several employees alleged Plaintiff behaved inappropriately at work.  Defendant was aware of a sexually explicit conversation Plaintiff initiated with Greg Straffer, a company auditor.  Mr. Straffer did not solicit or continue this conversation, but instead encouraged Plaintiff to stop.  Mr. Straffer later revealed this incident to the Vice President of Human Resources, Randy Hart. Defendant claims that this incident was one of the reasons for Plaintiff's termination.

Plaintiff's claims primarily arise out of another incident where he allegedly behaved inappropriately at work.  It is uncontested that Defendant mandatorily required that employees become acquainted with its sexual harassment policy.  Plaintiff concedes that he was familiar with Defendant's procedure requiring that all incidents of sexual harassment be reported immediately, in writing, for investigation by Mr. Hart.  Plaintiff also admits that he was familiar with the type of behavior which constituted sexual harassment under Defendant's policies.  It is further uncontested that Plaintiff had the authority to discipline and suspend the employment of servers in violation of Defendant's sexual harassment policies.

Two female servers supervised by Plaintiff, Donerica Coleman and Shannon Rainey, claimed that Plaintiff exposed himself to them at work while in the back office of the restaurant. The servers' stories were similar, and both claimed that the camera in the office, which is usually focused on the manager's seat, would show nothing.  Consistent with the servers' description of events, the camera did not show anything on the nights in question.  When Ms. Rainey was in the

3

office, the camera had been moved such that it showed the back wall of the office, not the manager and cash drawer.  When Ms. Coleman was in the office, the camera only showed Plaintiff's back.  The parties agree that the images were indeterminate as to whether inappropriate behavior occurred.[1]  These allegations, after an investigation, are cited by the Defendant as the primary cause for Plantiff's termination.

When confronted with the allegations, Plaintiff denied that he had done anything inappropriate and responded that Ms. Coleman had sexually harassed him. Plaintiff states that, on two separate occasions, Ms. Coleman made inappropriate comments to him and grabbed his genitals.  Plaintiff states that other employees witnessed these incidents, but no other employees have yet testified that they observed Ms. Coleman behaving in that way.  According to Plaintiff, he asked Ms. Coleman to stop after the first event.  After the second incident he told the general manager of the Hopkinsville restaurant about Ms. Coleman's alleged behavior.  Plaintiff did not take any disciplinary action against Ms. Coleman, though he certainly had the authority to do so.  Plaintiff also did not submit any written statement about the harassment, as required by Defendant's sexual harassment policy, until after Ms. Coleman and Ms. Rainey had made similar allegations against him.

Plaintiff also discounts the complaints made against him.  He claims that Ms. Rainey

---

[1]Plaintiff makes much ado over the fact that these tapes were lost during the Defendant's investigation of the servers' claims and seeks the Court's finding of an adverse inference.  The employees of Defendant who conducted the investigation and viewed the tapes, however, have retained memoranda confirming the above description of the tapes.  Although all who have viewed the tapes testify consistently that the tapes show exactly what this opinion describes, Plaintiff suggests that the tapes may somehow exonerate him from any claims of sexual harassment.  Regardless, neither the Plaintiff nor the Defendant present any evidence stating that the tapes show any occurrence pertinent to Plaintiff's claims of discrimination.  Thus, Plaintiff's statement that the loss of the tapes creates an inference of Defendant's wrongdoing is misplaced.

made her complaint in retaliation after Plaintiff confronted her boyfriend for behaving inappropriately in the restaurant.  Plaintiff states that Ms. Coleman fabricated her claims only to preemptively protect herself from any claims of harassment Plaintiff might bring against her. Plaintiff also suggests that the two servers' stories were inconsistent until they spoke together at work; essentially, Plaintiff claims that the two servers colluded against him to make their allegedly fictitious claims more credible.

Before terminating Plaintiff, Defendant conducted an investigation into both Plaintiff's and the servers' sexual harassment claims.[2]  About three weeks after Plaintiff and the servers presented their complaints to management, Mike Dimon, working with Mr. Hart, traveled to the Hopkinsville restaurant to investigate.  He reviewed the tapes and interviewed the parties involved, taking notes.  Mr. Dimon admits that he could not ascertain whether Ms. Coleman's allegations were true.  After discussing the matter carefully, Mr. Dimon and Mr. Hart decided to terminate Plaintiff, in part because of the allegations made by Ms. Coleman and Ms. Rainey.

During his employment with Defendant, Plaintiff never made any claims of racial or sexual discrimination.  He did not make any claims of discrimination at the time of his termination, even though he was provided with paperwork where he was afforded an opportunity to write comments before signing the form.  He only contested that he had not sexually harassed the servers and should not have been terminated on that basis.  When seeking funding for the present lawsuit from the Equal Employment Opportunity Commission ("EEOC"), Plaintiff did

---

[2]Again, Plaintiff attaches special importance to the fact that Defendant's management lost the files of the investigation into the servers' claims.  Plaintiff does not argue that the files would contain any specific evidence supporting his claims that his termination was based on his sex or his race.  Neither does Plaintiff argue that the files contain any information exculpating him from the servers' claims of sexual harassment.

not mention his claims of discrimination.  Only after initiating this lawsuit did he first allege

racial and sexual discrimination.

Plaintiff now claims that he was terminated by Defendant because of his status as a

Caucasian male.  Plaintiff bases these allegations on his description of Defendant's treatment of

Ms. Coleman, who is an African-American female.  According to Plaintiff, he was told that Ms.

Coleman was not to be disciplined because she might claim that she was being discriminated

against because of her race.  Plaintiff cannot precisely recall who told him this, but suggests that

Mr. Dimon articulated this policy to him.  Plaintiff also alleges that Mr. Dimon made racially and

sexually discriminatory comments to Plaintiff at the time of his termination.  Specifically,

Plaintiff states that Mr. Dimon told him:

> You're a white male; she is a black female.  And the company feels that
> they face less risk of being sued if we fire you than if we fire someone
> that we know plays the race card.  We've told you before she plays the
> race card.  You've been told to leave her alone, and the company just
> feels like it faces more of a danger of a suit, more risk by terminating her
> than terminating you.

Plaintiff claims that these conversations, if proven, create an inference of racial and sexual

discriminatory treatment of him because Defendant might have a policy not to discipline or

terminate a hypothetical similarly situated African-American female manager if she engaged in

identical conduct to that of the Plaintiff.[3]  Plaintiff also contends that these statements are direct

---

[3]Both parties note that Plaintiff's case would fail as a matter of law if he based his claims
solely on a comparison of Defendant's treatment of sexual harassment claims against Plaintiff to
Defendant's treatment of sexual harassment claims against Ms. Coleman, an African-American
woman.  Under the *McDonnell Douglas* test, an inference of discrimination may only be shown
where the Plaintiff proves disparate treatment of similarly situated employees.  *Pierce v.
Commonwealth Life Ins. Co.*, 40 F.3d 796, 801 (6th Cir. 1994).  *See also McDonnell Douglas
Corp. v. Green*, 411 U.S. 792, 801 (1973).  According to the Sixth Circuit Court of Appeals, a
"harasser's title and/or job responsibilities could be construed as a 'relevant aspect of his

evidence of Defendant's discrimination.

Plaintiff presents little evidence other than his own deposition in support of these claims; he merely notes Mr. Hart's statement that, if an investigation showed that Ms. Coleman sexually harassed Plaintiff or other managers, she should have been fired for her behavior. Management of Defendant, when asked, denied that a racially biased policy exists or that any racist or sexist statements were made to Plaintiff by his supervisors. Instead, Defendants present contrary evidence that the general manager of the Hopkinsville restaurant disciplined Ms. Coleman on at least one occasion, acting under the instruction of Mr. Dimon. This disciplinary action took place before this suit was filed and during the time that Plaintiff claims Defendant followed a policy against disciplining Ms. Coleman. Defendant also submits that shortly after Plaintiff's termination, Ms. Coleman was fired for conduct unrelated to this case.

Lastly, in support of its case, Defendant notes that Plaintiff served as a leading member of a white supremacist organization, White Revolution, which advocates hatred against minorities, including African-Americans. Plaintiff does not deny his affiliation with White Revolution, but

---

employment situation'" in a reverse discrimination case under Title VII. *Pierce*, 40 F.3d at 802. The Court in *Pierce* held that the company's handling of sexual harassment claims against a male supervisor could not be compared with the treatment of claims against a female subordinate, as the two were not similarly situated; the employees' roles at the company must be "nearly identical." *Id.* at 802; *See also Parries v. Makino, Inc.*, 148 Fed. Appx. 291, 296 (6th Cir. 2005) (unpublished) ("In a discriminatory discipline or firing context, 'similarly situated' means that the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."); *Palmer v. Potter*, 97 F.Appx. 522, 525-26 (6th Cir. 2004) (unpublished). The Sixth Circuit's ruling is decisive of any claims Plaintiff might make claiming disparate treatment of himself and Ms. Coleman. Plaintiff is careful to extricate himself from any prior arguments that he is comparing Defendant's treatment of him with Defendant's treatment of Ms. Coleman.

insists that he did not join the organization until after his termination from Defendant's restaurant. Defendant did not discover Plaintiff's membership in this group until after his employment was terminated. Membership in a racial hate group, however, is grounds for termination under Defendant's diversity policies.

Defendant claims Plaintiff's testimony that discriminatory statements were made to him is not credible. The statements are self-serving and Plaintiff cannot corroborate these policies through supporting witness testimony. Rather, Ms. Coleman's disciplinary record indicates that discriminatory policies were not in place. Defendant also urges that Plaintiff's testimony should be taken with a grain of salt in light of Plaintiff's bias against African-Americans as a member of White Revolution. Defendant claims that the Plaintiff's comparison of himself to a hypothetical African-American female manager does not create an inference of discriminatory treatment. Significantly, Plaintiff never compares his treatment to that of any actual manager. Lastly, Defendant argues that even if Plaintiff could show that discriminatory treatment was a factor in the decision to terminate Plaintiff, Defendant had separate grounds on which to base the termination. At the time Plaintiff was terminated, Defendant might have fired him based on: Ms. Rainey's sexual harassment claims against Plaintiff, Plaintiff's refusal to follow Defendant's mandatory sexual harassment reporting policy, Plaintiff's neglect to discipline Ms. Coleman for any inappropriate behavior she engaged in, and Plaintiff's inappropriate comments to Mr. Straffer which were reported to Mr. Hart. Since this suit has been filed, Defendant has discovered further evidence which might also have legitimately led to Plaintiff's termination: that Plaintiff was a member of an organization promoting hatred of African-Americans, that Plaintiff violated Defendant's fraternization policy, and that Plaintiff lied to Defendant during the investigation of

8

Plaintiff's transfer request.  Therefore, Defendant brought this motion seeking summary judgment denying Plaintiff's claims.

## STANDARD

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact."  *Street v. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).  The test is "whether the party bearing the burden of proof has presented a jury question as to each element in the case."  *Hartsel v. Keys,* 87 F.3d 795, 799 (6th Cir. 1996) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986)).  "The plaintiff must present more than a mere scintilla of evidence in support of her position; the plaintiff must present 'evidence on which the jury could reasonably find for the plaintiff.'"  *Id.* (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986)).  Mere speculation will not suffice to defeat a motion for summary judgment.  "The mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment.  A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate."  *Monette v. Elec. Data Sys. Corp.,* 90 F. 3d 1173, 1177 (6th Cir. 1996)

9

(citing *Anderson*, 477 U.S. at 247-49).

## DISCUSSION

### I.      Plaintiff's Claims under Title VII

Plaintiff may take either of two paths to prove his case as to his Title VII claims.    Plaintiff

may prove an inference of discrimination through the *McDonnell Douglas* three step formula.

"The McDonnell Douglas formula is inapplicable, however, to cases in which Title VII plaintiff

presents credible, direct evidence of discriminatory animus." *Terbovitz v. Fiscal Court*, 825 F.2d

111, 114-15 (6th Cir. 1987) (*citing Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121

(1985) and *Blalock v. Metal Trades, Inc.*, 775 F.2d 703, 707 (6th Cir. 1985)).  "Direct evidence

and the McDonnell Douglas formulation are simply different evidentiary paths by which to

resolve the ultimate issue of defendant's discriminatory intent." *Blalock*, 775 F.2d at 707.

Plaintiff claims that he can show both direct evidence of reverse discrimination and can

successfully create an inference of discrimination under the *McDonnell Douglas* formula.  As the

required showing of proof on the part of the Plaintiff and the burdens of proof and persuasion

differ under each path, the Court analyzes each path in turn.

### A.      Plaintiff's Showing of Direct Evidence of Discriminatory Animus

A plaintiff's prima facie case that Title VII has been violated through a showing of direct

evidence indicating discriminatory animus is dependent upon the Plaintiff's production of credible evidence that compels the conclusion, without any inference, that the Defendant was motivated by a discriminatory animus. *Blalock,* 775 F.2d at 708 (citing *Thompkins v. Morris Brown College,* 675 F.2d 558, 563 (11th Cir. 1985)). *See also Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1248-49 (6th Cir. 1995) (quoting *Blalock*, 775 F.2d at 708); *Terbovitz,* 825 F.2d at 115 & n.3 (*quoting Blalock*, 775 F.2d at 707-08). The analysis under direct evidence standards proceeds only if the factfinder determines the evidence is credible; if the factfinder does not believe the plaintiff's proffered direct evidence, the Court proceeds in analyzing the evidence under the *McDonnell Douglas* formula to determine whether an inference of discrimination exists. *Terbovitz*, 825 F.2d at 115 n.3 (citing *Blalock*, 775 F.2d at 707-08) ("Of course, if the district court does not believe the plaintiff's proffered direct evidence, then the evidentiary framework of McDonnell Douglas is the proper mode of analysis."). The Court continues analysis of credible direct evidence of discriminatory animus by finding "facts requiring the conclusion that unlawful discrimination was at least a 'motivating factor' for the employer's actions." *Terbovitz,* 825 F.2d at 115 (citing *Blalock*, 775 F.2d at 707-10). "[I]f the employer does not propose an alternative explanation for its actions, Title VII liability will automatically follow." *Id.* Under the Plaintiff's case that he has direct evidence of discrimination by the Defendant, the Plaintiff must only show that Defendant's proven discrimination was a factor in the decision to terminate Plaintiff, not that Plaintiff would not have been fired but for the Plaintiff's discrimination. *Id.*

To rebut a plaintiff's showing of credible direct evidence of discriminatory animus, courts have held that the employer must do more than merely articulate a legitimate nondiscriminatory motivation for its actions. *Id.* (citing *Blalock*, 775 F.2d at 710). According one ruling of Sixth

11

Circuit Court of Appeals, the burden of proof shifts, and the employer must "prove by a *preponderance of the evidence* 'that the adverse employment action would have been taken even in the absence of the impermissible motivation.'" *Id.* (quoting *Blalock*, 775 F.2d at 712) (adopting the standard set out for public employers under *Mt. Healthy City School District Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977)) (emphasis added). *See also Laderach v. U-Haul of Nw. Ohio*, 207 F.3d 825, 829 (6th Cir. 2000); *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999). In other words, the employer must show that there were at least two motives for the employment decision, one legitimate in addition to the plaintiff's proven discriminatory motive. Under this view, if the employer does not convince the Court by a preponderance of the evidence that the employment action would have been taken if there were no discriminatory animus, the plaintiff's direct evidence of discrimination may not be rebutted. Title VII liability would be imposed. Where the employer does succeed in convincing the Court, by a preponderance of the evidence that any discriminatory evidence did not ultimately impact the employment decision, the legitimate nondiscriminatory motivation stands as an affirmative defense, duly proven by the employer. *Terbovitz.* 825 F.2d at 115.[4]

The Court must first determine whether the evidence presented by Plaintiff are direct

---

[4]Courts have held more recently, however, that the burden of persuasion always remains with the plaintiff and that the employer need only articulate nondiscriminatory reasons for terminating the plaintiff to overcome plaintiff's showing of direct evidence. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993); *Kocsis v. Multi-Care Mgmt., Inc.,* 97 F.3d 876, 883 (6th Cir. 1996). It is unclear whether the Sixth Circuit would relieve the defendant of the burden in a case involving Plaintiff's direct evidence of discrimination, rather than an inference of discrimination. The Court, however, need not linger on this point as it is clear that, in this case, the Defendant can show legitimate alternative reasons for terminating the Plaintiff by a preponderance of the evidence.

evidence of discrimination or merely create an inference that discrimination motivated Defendant's termination of Plaintiff.  if any inference must be made in reaching the conclusion, no direct evidence has been presented.  *Blalock*, 775 F.2d at 707 (citing *Lee v. Russell County Bd. of Educ.*, 684 F.2d 769, 774 (11th Cir. 1982); *Miles v. M.N.C. Corp*, 750 F.2d 867, 875-76 (11th Cir. 1983); *Perryman v. Johnson Prods. Co.*, 698 F.2d 1138, 1143 (11th Cir. 1983)).  Plaintiff contends that Mr. Dimon's alleged statements to him at the time of his termination (that it is easier to fire a white male than a black female and that firing a black female might put Defendant at increased risk of a lawsuit) constitute direct evidence that the choice to terminate Plaintiff was based partly on his status as a Caucasian male.  If these statements are true, a conclusion that Defendant's decision to terminate Plaintiff was motivated by both racial and sexual discriminatory animus is possible.  It might be argued, however, that the statements merely describe why the Defendant chose not to fire an African-American female, and that the statements do not constitute an explanation why anyone, including Plaintiff, should be fired, and that an inference must be made to show this motivated Plaintiff's termination.  Even so, the Court determines that a jury might reasonably find that Mr. Dimon's alleged statement constitutes direct evidence of discriminatory animus.  Therefore, further analysis of this statement is necessary.

Plaintiff also submits that Defendant's racial discrimination is evident through its managers' statements to Plaintiff to refrain from disciplining Ms. Coleman because of her race. Plaintiff argues that, because these statements, if proven, would show racial bias, they are direct evidence of discriminatory treatment.  In support of his position, Plaintiff cites *Talley v. Bravo Pitino Restaurant.  Talley*, 61 F.3d at 1249.  In that case, the plaintiff presented two witnesses in addition to his own affidavit in stating that management regularly made racial slurs as his direct

evidence of discrimination.  The case relies on other cases from the Eleventh Circuit Court of

Appeals where the employers promoted a general atmosphere belittling the plaintiffs through

racial slurs.  *Miles*, 750 F.2d at 875-76; *Lee*, 684 F.2d at 774.  The case at bar is distinguishable in

that Defendant did not promote a workplace where Caucasians were regularly belittled and

insulted through directly stated racial slurs by the management.  At most, Plaintiff's description of

Defendant's alleged racially discriminatory policies might create an inference that racism played a

role in Plaintiff's termination.  Therefore, the Court holds that this alleged policy does not

constitute direct evidence of discriminatory animus as a matter of law.

Since the Court has identified potential direct evidence of discriminatory animus, the next

step is to determine whether a factfinder could reasonably lend credibility to these statements.[5]

*Blalock*, 775 F.2d at 707 (citing *Lee*, 684 F.2d at 774; *Miles*, 750 F.2d at 875-76; *Perryman*, 698

F.2d at 1143).  The evidence that Mr. Dimon made this statement is not as "clear and

unequivocal" as Plaintiff states.  Any evidence of discriminatory statements or policies comes

wholly from Plaintiff's own deposition.  As such, it is self-serving, uncorroborated, and lacking in

credibility.  Courts have held that a plaintiff's testimony alone is not enough to establish a

question of fact as to whether direct evidence of racial or sexual discrimination exists.  *See, e.g.,*

*Carter v. George Washington Univ.*, 180 F.Supp. 2d 97, 111 (D.D.C. 2001), *aff'd* 387 F.3d 872

---

[5]Some Sixth Circuit cases also suggest that the Court may determine, as a matter of law, whether the direct evidence of discriminatory animus is credible before presenting the matter to a jury. *See, e.g., Blalock,* 775 F.2d at 708 (quoting *Thompkins v. Morris Brown College,* 675 F.2d 558, 563 (11th Cir. 1985)) ("When direct evidence of discrimination has been introduced, the lower court must, as an initial matter, specifically state whether or not it believes plaintiff's proffered direct evidence of discrimination.").  In these cases, however, the courts are acting as the factfinders.  In this case, the Court determines that the question of credibility ultimately resides with the jury.  Under summary judgment, the Court merely decides, as a matter of law, whether a jury could reasonably conclude that the evidence presented is credible.

(D.C. Cir. 2004) ("Self-serving affidavits alone will not protect the non-moving party from summary judgment."); *Lemmons v. Georgetown Univ. Hosp.*, 431 F.Supp. 2d 76, 90 (D.D.C. 2006) (holding that self-serving statements are not credible enough to overcome summary judgment on a case for direct evidence of discrimination under Title VII); *Alfaro v. Dana Container, Inc.* No. 04-72664, 2005 U.S. Dist. LEXIS 8336 (W.D. Mich. May 9, 2005) (unpublished) (holding that where plaintiff's evidence was his own self-serving and uncorroborated testimony of racial slurs, the evidence was insufficiently credible to serve as direct evidence for Title VII purposes). *But see Terbovitz*, 825 F.2d at 113 (holding that the plaintiff's allegations that defendant had advised her that it would not hire a woman for the position at issue was sufficient to create an issue of direct evidence when other circumstantial evidence supported plaintiff's contention).  While the wisdom of other federal courts might support a holding that Plaintiff's testimony alone cannot constitute direct evidence credible enough to pass muster under summary judgment, conflicting case law makes the Court reluctant to base its decision solely on this reasoning.

The Court finds that Plaintiff's testimony of Mr. Dimon's statements is weak for several other reasons.  Defendant acted in contravention of the policies Plaintiff stated were in place; instead of refraining from disciplining or firing female African-American employees, Defendant shows evidence that it disciplined and terminated Ms. Coleman near in time to Plaintiff's termination.  The Court also finds that Plaintiff's statements are questionable because he did not mention any racial or gender discrimination on either the Defendants' termination papers or on EEOC forms, even though both forms provided a place to voice such grievances.  Lastly, the Court notes that Plaintiff's membership in a group promoting the hatred and opposition of

15

African-Americans might create a motive other than truth for his claims of discrimination. While these factors may damage the credibility of Plaintiff's testimony, the Court prefers to present the issue of credibility to the jury.  It is generally the factfinder's province to determine whether Plaintiff's proffered direct evidence of discriminatory animus is worthy of belief and to weigh the sufficiency of Plaintiff's evidence against the alternative reasons for termination presented by the Defendant.  In this case, the Court finds that a reasonable factfinder might conclude that Plaintiff's testimony is sufficiently credible direct evidence of discriminatory animus to require a response on the part of the Defendant.  Therefore the Court continues its analysis of direct evidence under the summary judgment standard.[6]

The Court finds that the Defendant has rebutted Plaintiff's claims and created an affirmative defense as a matter of law.  The Defendant has shown Plaintiff's dismissal was not solely based on a choice between firing a Caucasian male or an African-American female. Plaintiff was also dismissed because of sexual harassment complaints lodged against him by Mr. Straffer and Ms. Rainey.  Plaintiff does not even contest the validity of Mr. Straffer's complaint. It is clear, under Defendant's sexual harassment policy, that Plaintiff should have been fired for his behavior toward Ms. Rainey and Mr. Straffer.  The fact that another sexual harassment complaint was filed against Plaintiff, even if Ms. Coleman were of Caucasian descent, serves as further evidence that repeated sexual harassment complaints against Plaintiff created independent grounds on which Defendant would have fired Plaintiff. Therefore, even if a jury were to find Plaintiff's direct evidence credible, Defendant has shown that Plaintiff would have been

---

[6]If a jury finds that the Plaintiff's proffered direct evidence is not credible, the Court's analysis of the statements under the *McDonnell Douglas* formula, *infra*, applies.

16

terminated regardless of any discriminatory motive.  In light of Defendant's affirmative defense,

Plaintiff is not entitled to recover on the basis of any direct evidence of discriminatory animus.


**B.**    **Plaintiff's Claims to Show an Inference of Discrimination**


While Plaintiff cannot succeed on his claims of discrimination through a showing of direct

evidence, he contends that he can show an inference of discrimination through circumstantial

evidence.  An inference of reverse discrimination based on gender or race under Title VII requires

a tripartite analysis.  A plaintiff must first show a prima facie case of reverse discrimination.  The

defendant may then rebut that claim by showing nondiscriminatory reasons for its actions.  This is

merely a burden of articulation for the defendant.  *St. Mary's Honor Ctr.,* 509 U.S. at 507-09

(1993); *Board of Trustees v.* Sweeney, 439 U.S. 24, 25 (1978).  *See also Felder v. Nortel*

*Networks Corp.*, No 05-5250, 2006 U.S. App. LEXIS 17288 at *15 (6th Cir. July 10, 2006)

(unpublished) (citing *St. Mary's Honor Ctr.,* 509 U.S. at 509 (1993).  In order to defeat summary

judgment, the plaintiff must respond with sufficient evidence to convince a rational finder of fact,

by a preponderance of the evidence, that the defendant's employment decision was based in whole

or in part on discrimination despite the defendant's stated alternative reasons for their actions.  *St.*

*Mary's Honor Ctr.,* 509 U.S. at 507-09 (1993).

> The McDonnell Douglas formula proceeds under the assumption that a
> single motive explains the employer's decision to take an employment
> action adverse to the plaintiff.  The shifting burdens of McDonnell
> Douglas are designed to determine which motive -- the alleged unlawful
> discrimination or the employer's asserted nondiscriminatory justification
> -- is the "true" reason for the employer's adverse employment action. The
> plaintiff at all times retains the burden of proving that the discriminatory

17

motivation was more likely than not the "true" reason for the employer's decision.
*Terbovitz*, 825 F.2d at 114 (citing *Haskins v. United States Dep't of the Army*, 808 F.2d 1192, 1197 (6th Cir. 1987); *Bibbs v. Block*, 778 F.2d 1318, 1320-21 (8th Cir. 1985) (en banc); *Jackson v. RKO Bottlers of Toledo, Inc.,* 743 F.2d 370, 375 (6th Cir. 1984)).

Since the Plaintiff must produce strong evidence which convinces the Court of his position by a preponderance of the evidence, the mere belief or conclusory statements of the Plaintiff are not enough to meet this burden of persuasion and overcome summary judgment. *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584 (6th Cir. 1992).

In order to present his prima facie case for an inference of reverse discrimination, Plaintiff must show "(i) that background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority; and... (ii) that the employer treated differently employees who were similarly situated but not members of the protected class." *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 801 (6th Cir. 1994) (articulating a modified *McDonnell Douglas* formula for use in reverse discrimination cases) (internal citations omitted). *See also Logan v. Express, Inc.*, No. 92-4363 1993 U.S.App. LEXIS 32656 (6th Cir. Dec. 10, 1993) (unpublished) (indicating that *Pierce* extends to Title VII reverse discrimination cases). Plaintiff submits that his allegations that Defendant had racially discriminatory policies establish that Defendant was the type of employer to discriminate against the majority, Caucasian males. Plaintiff asserts that he can complete his prima facie case by comparing Defendant's treatment of him to the hypothetical treatment of hypothetical similarly situated African-American female managers.  The Court concludes that Plaintiff cannot establish his prima facie case.

The Court has already ruled that Plaintiff's self-serving testimony, standing alone, is not

credible enough to establish Defendant's burden of proof under the direct evidence standard.  The Court also finds that the Defendant does not present any credible evidence of background circumstances that Defendant is the unusual sort of employer who discriminates against the majority.  However, even if the Court found that Plaintiff had created a question of fact as to whether Defendant has a tendency to discriminate, the Plaintiff makes no claims which would satisfy the second element of his prima facie case.

Under a *McDonnell Douglas*-type analysis of reverse discrimination, Plaintiff must compare Defendant's treatment of a similarly situated person of a minority class with Defendant's treatment of Plaintiff.  At no point does Plaintiff set a female or non-Caucasian manager out as an example.  Plaintiff, in fact, never compares Defendant's treatment of himself with that of any other manager.  Rather, Plaintiff hypothecates a minority manager and speculates as to what Defendant's treatment of the hypothetical manager would be.  Plaintiff then concludes, that if the Defendant were to treat some hypothetical manager in the way that Plaintiff speculates it might, Defendant would then have discriminated against Plaintiff.  Plaintiff does not contend that he was treated differently than other managers.  The discriminatory policies that Plaintiff speculates might apply to himself and other managers are only evidenced in Plaintiff's own testimony.  Even then, the discriminatory policies Plaintiff alleges that Defendant had in place seem to only apply to one employee, not all employees of a certain gender or race.

*McDonnell Douglass* requires comparison with another actual employee.[7]  *See Scott v. Central School Supply, Inc.,* 913 F.Supp. 522, 527 (E.D. Ky. 1996) (noting that the Sixth Circuit

---

[7]Again, Plaintiff would not fulfill the second element of his case by comparing the treatment of himself and Ms. Coleman in their sexual harassment investigations.  Since Ms. Coleman is a server and Plaintiff is a manager, they are not similarly situated.

has determined that a generic statement to the effect that "any man who engaged in similar conduct would not have been fired" to be "conclusory and plainly insufficient to raise a triable issue of pretext"), *aff'd* 121 F.3d 709.  To fulfill the second element of the *Pierce* test, Plaintiff would need to single out a manager of a minority class with a similar level of experience and with similar duties to himself.  Plaintiff would have to show that this manager had at least three sexual harassment complaints directed against him or her.  Then Plaintiff would need to show that, after an investigation, this manager was not terminated for his or her behavior.  Plaintiff has made no such showing.  As such, discrimination cannot be inferred under the *McDonnell Douglas* analysis as modified by *Pierce*.

Although the Plaintiff cannot present a prima facie case of discrimination, the Court proceeds with the *McDonnell Douglas* analysis for the sake of completeness.  Assuming, *arguendo*, that the Plaintiff had presented a prima facie case, the burden shifts to the Defendant to articulate a legitimate nondiscriminatory reason for its actions.  This is only a burden of production, not persuasion, on the part of the Defendant, because the"ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981).  Defendant has demonstrated several nondiscriminatory reasons for terminating Plaintiff, including: Ms. Rainey's complaint against Plaintiff, Mr. Straffer's complaint against Plaintiff, that three sexual harassment complaints aggregated against Plaintiff in a short period of time, and that Plaintiff did not strictly adhere to the Defendant's sexual harassment reporting policies.

The Defendant having satisfied its burden of articulation, the Plaintiff then has the burden

20

to prove causation, by a preponderance of the evidence.  The Plaintiff need not show that discrimination was the sole reason for his dismissal; more than one motive for dismissal may be presented.  Plaintiff need only show that "but for" the discrimination he would not have been fired.  *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 282 n.10 (1976); *Blalock,* 775 F.2d at 709; *Bibbs*, 749 F.2d at 511; *Jack v. Texaco Research Center*, 743 F.2d 1129, 1131 (5th Cir. 1984); *Lewis v. University of Pittsburgh*, 725 F.2d 910, 915 (3d Cir. 1983).  "This "but for" causation is satisfied when the plaintiff establishes that the defendant's discriminatory intent more likely than not was the basis of the adverse employment action."  *Blalock,* 775 F.2d at 709 (citing *Burdine*, 450 U.S. at 256; *Bibbs*, 749 F.2d at 511).   In other words, Plaintiff must show that it is more likely than not that all the legitimate, nondiscriminatory reasons stated by Defendant for Plaintiff's termination are mere pretext and that the Defendant's racial and gender discrimination were the real reasons for the termination.  *Terbovitz*, 825 F.2d at 114 (citing *Haskins v. United States Dep't of the Army*, 808 F.2d 1192, 1197 (6th Cir. 1987); *Bibbs v. Block*, 778 F.2d 1318, 1320-21 (8th Cir. 1985) (en banc); *Jackson v. RKO Bottlers of Toledo, Inc.,* 743 F.2d 370, 375 (6th Cir. 1984)); *Felder*, No 05-5250, 2006 WL 1889275 at *5 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)).

To show that Defendant's reasons for termination are mere pretext, Plaintiff must "show by a preponderance of the evidence either (1) that the proffered reasons had no basis *in fact*, (2) that the proffered reasons did not *actually* motivate his discharge, or (3) that they were *insufficient* to motivate discharge."  *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994) (quoting *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 513 (7th Cir. 1993)).  To persuade a trier of fact that the Defendant intentionally discriminated against him, the Plaintiff

21

presents only his statements that Defendant had a policy not to discipline or fire Ms. Coleman because of her status as an African-American woman and Plaintiff's allegation that Defendant's management told him directly that he was terminated because of his race and gender.  Neither of these statements are corroborated by any other evidence.  In fact, other evidence indicates that these race and gender biased policies were not in place.  The Court holds that, as a matter of law, the Plaintiff has not presented strong enough evidence to satisfy his burdens of proof and persuasion.  Uncorroborated, conclusory statements and self-serving allegations taken solely from Plaintiff's testimony cannot alone satisfy Plaintiff's burdens.  *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584 (6th Cir. 1992).  *See also Evans v. Jay Instrument & Specialty Co.,* 889 F.Supp. 302, 310 (S.D. Ohio 1985) (holding that plaintiff's self-serving conclusory declarations of actual discrimination on the part of the defendant decision makers were insufficient to raise a triable issue of pretext).

Even if Plaintiff's evidence of discriminatory reasons for his termination were strong enough to overcome summary judgment, he does not show any evidence to attack Defendant's legitimate alternative explanations for Plaintiff's termination as pretext.  While Plaintiff challenges the truthfulness of Ms. Rainey's sexual harassment claim, he does not contest Mr. Straffer's complaint.  Plaintiff never argues that the sexual harassment complaints filed by Ms. Rainey and Mr. Straffer, after an investigation which was concluded unfavorably to him, were insufficient to result in his termination.  In fact, a legitimate reason for termination of Plaintiff does not require absolute proof that he sexually harassed his coworkers, but merely an "honest belief" on the part of Defendant that Plaintiff behaved inappropriately.[8]  *Smith v. Chrysler Corp.*,

---

[8]Whether the harassment actually occurred is irrelevant to Plaintiff's claims.

115 F.3d 799, 806-07 (6th Cir. 1998).  Therefore, the Court has no reason to believe that the

Defendant's legitimate reasons for termination were pretextual and no reason to conclude that

Plaintiff would have not have been terminated absent any discrimination on the part of the

Defendant.  On this ground, as well as the fact that the Plaintiff cannot present a prima facie case,

Plaintiff's claims that discrimination can be inferred are denied.

**C.      Defendant's After-Acquired Evidence Partial Defense**

Defendant notes that, even if the Plaintiff had established Defendant's liability under Title

VII, his remedies would be limited by evidence of additional bases for Plaintiff's termination

Defendant discovered during the course of this case.  An employer is somewhat insulated from

liability under Title VII for discriminatory actions if it learns after the fact of an independent and

otherwise legitimate reason for taking the adverse employment action.  *Johnson v. Honeywell*

*Sys., Inc.*, 955 F.2d 409, 412 (6th Cir. 1992); *Milligan-Jensen v. Michigan Tech. Univ.,* 975 F.2d

302, 304-05 (6th Cir. 1992).   While after-acquired evidence does not act as an absolute bar to

recovery, it nevertheless limits the remedy to damages incurred before the new evidence was

discovered.  *Wehr v. Ryan's Family Steak Houses, Inc.,* 49 F.3d 1150, 1153-54 (6th Cir. 1995).

Since this suit was instituted, Defendant has discovered instant messages written by

Plaintiff indicating that he violated Defendant's fraternization policy while employed by

Defendant's Clarksville, Tennessee, restaurant.  Even if this were not a basis for Plaintiff's

termination, the instant messages also reveal that Plaintiff lied to Defendant about his violation of

the fraternization policy during Defendant's investigation of Plaintiff's restaurant transfer request.

Defendant states that, were Plaintiff's dishonesty discovered during his employment, Defendant would have immediately terminated Plaintiff.

Even if Defendant had not discovered evidence of Plaintiff's lie during his employment, Defendant would have terminated Plaintiff for his involvement and leadership in a white supremacy organization promoting the hatred of minorities.  Defendant states that Plaintiff's membership in a minority hate group would lead to immediate termination since such an association is inconsistent with Defendant's policies promoting diversity in the workplace. Therefore, Plaintiff would not be entitled to front pay from the earlier of the dates on which Defendant discovered Plaintiff's instant messages or Plaintiff's membership in White Revolution.

## II.     Plaintiff's § 1981 Claims

Plaintiff claims that Defendant violated 42. U.S.C. § 1981 by allegedly deciding to terminate Plaintiff based on his race and gender.  Defendant convinces the Court of several reasons why Plaintiff's § 1981 claims must fail.

First, Defendant submits that § 1981 is inapplicable to Plaintiff's employment situation. § 1981 only protects persons from discrimination in the formation or enforcement of contracts. *Patterson v. McLean Credit Union*, 491 U.S. 164 (1989); *Prather v. Dayton Power & Light Co.*, 918 F.2d 1255, 1257 (6th Cir. 1990) (extending *Patterson* to cases of discriminatory discharge). *See also Ang v. Procter & Gamble Co.*, 932 F.2d 540, 545 (6th Cir. 1991).  Discharge from employment does not involve the enforcement or formation of a contract.  *Prather*, 918 F.2d 1257.  In particular, Plaintiff was an at-will employee of Defendant.  "[W]hether an at-will

24

employment relationship constitutes a contract [is a] matter[] of state law." *Aquino v. Honda of America, Inc.,* 158 Fed. Appx. 667, 674 n.3 (6th Cir. 2005). Under Kentucky law, an at-will employee is not in a contractual relationship with his employer. *Nork v. Fetter Printing Co.*, 738 S.W.2d 824, 827 (Ky. App. 1987). *See also Shepherd v. Boysen*, 849 F.Supp. 1168 (E.D. Ky. 1994) (holding that a public at-will employee did not have enforceable contract rights against his employer for purposes of 42 U.S.C. § 1983). Since Plaintiff is neither forming nor enforcing a contract against Defendant, § 1981 grants him no cause of action.

Even if Plaintiff had asserted remediable claims under § 1981, his claims would not survive analysis on the merits. The legal elements of a § 1981 claim are essentially identical to a Title VII claim, and the same substantive analysis applies. *Jackson v. Quanex*, 191 F.3d 647, 658 (6th Cir 1999); *Mitchell*, 964 F.2d at 582. Since the Court has denied Plaintiff's Title VII claims as a matter of law, Plaintiff's claims under § 1981 also fail.


**CONCLUSION**

The Defendant's Motion for Summary Judgment on all of Plaintiff's claims is **GRANTED**. An appropriate order shall issue.